# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-07-00002-CV

---

**Texas Logos, L.P., Appellant**

**v.**

**Texas Department of Transportation, and Michael W. Behrens, Individually, and in his capacity as Executive Director of the Texas Department of Transportation, Appellees**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT NO. D-1-GN-06-003868, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING**

---

## O P I N I O N

Since the inception of the Texas Department of Transportation's logo sign program in the early 1990s, Texas Logos, L.P., had held the contract to erect, maintain, and market fee-for-display opportunities on these now-familiar blue signs, located near Texas highway exits, that contain business logos of participating restaurants, gas stations, and lodging facilities. In December 2005, the department issued a request for proposals (RFP) seeking offers from vendors to operate the "Information Logo Sign and Tourist-Oriented Directional Sign Program"—which would include "specific information logo signs," "major shopping area guide signs," and new "tourist-oriented directional signs" with information about wineries and other agribusiness or tourist-oriented businesses—following the December 2006 expiration of Texas Logos's contract. Texas Logos, Media Choice/Quorum Media Group, L.L.C. (Media Choice), and other competing vendors

submitted proposals for award of the contract (the "logo sign contract"). The department ultimately awarded the logo sign contract to Media Choice.

After unsuccessfully pursuing the administrative protest remedies the department provided under its rules and requesting, and being denied, a contested-case proceeding on its protest under the Administrative Procedures Act, Texas Logos sued the department and its executive director, in his official capacity (collectively, TxDOT) and individually. Texas Logos alleges chiefly that TxDOT "exceeded its statutory authority" by violating or waiving the requirements of various statutes and rules governing its procurement of the logo sign contract, resulting in a procurement that was "riddled with fraud, conflicts of interest, and extra-statutory actions by TxDOT at virtually every turn." It sought declarations under the Uniform Declaratory Judgments Act (UDJA)[1] that TxDOT had violated procurement statutes and that the logo sign contract was void. Texas Logos also sought declarations under the UDJA that TxDOT was statutorily required to adjudicate its protest through a contested-case proceeding and that its refusal to do so rendered void the agency's order denying its protest. Finally, Texas Logos requested declarations under section 2001.038 of the Administrative Procedures Act[2] that TxDOT's administrative protest rules were, for this reason and others, invalid.

TxDOT (i.e., the department and Behrens in his official capacity) filed a plea to the jurisdiction, asserting that Texas Logos's claims against it were barred by sovereign immunity. The district court granted the plea and dismissed Texas Logos's claims against TxDOT; the claims

---

[1] Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001-.011 (West 1997 & Supp. 2006).

[2] Tex. Gov't Code Ann. § 2001.038 (West 2000).

2

against Behrens individually remained pending in the district court. Texas Logos appeals from this order.[3] For the reasons explained below, we affirm the district court's order.

## STANDARD AND SCOPE OF REVIEW

The subject matter jurisdiction of a trial court may be challenged through a plea to the jurisdiction. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004); *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000); *Hendee v. Dewhurst*, No. 03-06-00501-CV, ___ S.W.3d ___, ___, 2007 Tex. App. LEXIS 4149, at *22-23 (Tex. App.—Austin May 25, 2007, pet. denied). The immunity from suit encompassed by sovereign immunity derives a trial court of subject-matter jurisdiction, *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006) (citing *Miranda*, 133 S.W.3d at 224), and thus may be raised through a plea to the jurisdiction. Our discussion of "sovereign immunity" in this opinion refers to immunity from suit.

The determination of whether a trial court has subject matter jurisdiction begins with the pleadings. *See Miranda*, 133 S.W.3d at 226. The pleader has the initial burden of alleging facts that affirmatively demonstrate the trial court's jurisdiction to hear the cause. *Id.* (citing *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)). Whether the pleader has met this burden is a question of law that we review de novo. *Id.* We construe the pleadings liberally and look to the pleader's intent. *Id.*

---

[3] *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West Supp. 2006). In its notice of appeal, Texas Logos erroneously included Behrens in his individual capacity as one of the appellees. Thus, although our caption indicates otherwise, Behrens individually is not a party to this appeal.

If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend. *Id.* at 226-27. If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend. *Id.* at 227.

When a plea to the jurisdiction challenges the existence of facts alleged by the pleader to establish the trial court's subject matter jurisdiction, the trial court must consider relevant evidence submitted by the parties. *Id.* at 227 (citing *Bland*, 34 S.W.3d at 555); *Hendee*, ___ S.W.3d at ___, 2007 Tex. App. LEXIS 4149, at *24. Here, TxDOT has not challenged the jurisdictional facts alleged by Texas Logos, nor did it introduce controverting jurisdictional evidence.[4] It disputes only whether Texas Logos's pleadings are sufficient to affirmatively establish the district court's subject matter jurisdiction. Consequently, we assume the truth of the factual allegations contained in Texas Logos's pleadings. *Miranda*, 133 S.W.3d at 226.

Additionally, because Texas Logos attached jurisdictional evidence to its petition and introduced additional evidence in response to TxDOT's plea to the jurisdiction, we may consider it in resolving the jurisdictional challenges TxDOT has raised. *Bland*, 34 S.W.3d at 555 ("[A] court deciding a plea to the jurisdiction is not required to look solely to the pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised.").

---

[4] The only evidence TxDOT introduced was a copy of a letter from Texas Logos's counsel to establish that Texas Logos, not TxDOT, had requested the hearing on TxDOT's plea.

**PLEADINGS AND JURISDICTIONAL EVIDENCE**

**Challenges to logo sign contract**

On appeal, Texas Logos principally contends that it properly invoked the district court's subject-matter jurisdiction through its UDJA claims alleging that TxDOT exceeded its statutory authority when procuring the logo sign contract and seeking to declare the contract void. To summarize, Texas Logos alleges that TxDOT violated or exceeded its statutory authority by improperly skewing its procurement procedures to favor Media Choice, enabling Media Choice to submit fraudulent, misleading, and inaccurate information upon which TxDOT ostensibly based its award decision. Central to these allegations is Texas Logos's legal premise that TxDOT's procurement of the logo sign contract was governed by the State Purchasing and General Services Act (the "Purchasing Act"). *See generally* Tex. Gov't Code Ann. §§ 2151.001-2177.103 (West 2000 & Supp. 2006). Among other requirements, the Purchasing Act generally requires competitive bidding[5] and that state agencies purchase goods and services "that provide the best value for the state," for which "the purchase price and whether the goods or services meet specifications are the most important considerations." *Id.* § 2155.074(a)-(b) (West Supp. 2006).

Overall, Texas Logos alleges that TxDOT's conduct violated these competitive-bidding requirements by failing in its "obligation to place all bidders on the same 'plane of equality.'" *See Texas Highway Comm'n v. Texas Ass'n of Steel Imps., Inc.*, 372 S.W.2d 525, 527 (Tex. 1963) (regarding competitive-bidding principles). Texas Logos alleges specifically that

---

[5] *See* Tex. Gov't Code Ann. § 2155.063 ("Except as otherwise provided by this subtitle, a purchase of or contract for goods or services shall, whenever possible, be accomplished through competitive bidding.").

TxDOT violated or exceeded its statutory authority by ignoring several deficiencies in Media Choice's proposal.

Texas Logos pleads that Media Choice "omitted important pricing information" elicited by TxDOT's RFP. It asserts that Media Choice "omitted" from a required schedule "an entire row" of pricing information concerning installation charges for major shopping area guide signs, and thereby "failed to provide the required pricing for the minimum and maximum proposed fees for MSAGS Freeway Installation."[6] By nonetheless accepting Media Choice's "incomplete" proposal and awarding the logo sign contract on that basis, Texas Logos contends that TxDOT violated and waived its duties under the Purchasing Act to evaluate "the purchase price and whether the goods meet specifications" as "the most important considerations" in determining the "best value for the state." *See* Tex. Gov't Code Ann. § 2155.074. Texas Logos further pleads that TxDOT's consideration of Media Choice's "incomplete" proposal violated its rules "requir[ing] submission and consideration of the proposed fees to be charged to program participants and the percentage of those fees to be remitted to [TxDOT]." This allegation appears to allude to 43 Tex. Admin. Code § 25.403(b) (2007), which provides, in relevant part, that TxDOT "will determine the best value to the state by evaluating the contractor's . . . (8) proposed percentage to be paid to the department from fees collected from program participants; [and] (9) proposed amount for the fees that will be charged to participants in the program."

---

[6] Texas Logos also complains that Media Choice "did not follow the RFP's instructions" to fill in the blanks in the copy of the schedule provided, but "retyped the schedule including the bold, all caps statement setting forth the consequence for the failure to fully complete the schedule."

Texas Logos also pleads that it "performed an analysis" of the prospective fees that Media Choice would earn and retain compared to those Texas Logos would earn and retain under the companies' respective proposals. It concluded that "Media Choice would generate $17,011,398 more in gross revenue . . . than by using the fees proposed by Texas Logos" during the five-year contract term, but "Media Choice would return $2,568,629 **less** to the State than Texas Logos during that time period while retaining in Media Choice's coffers $19,580,027 **more** than Texas Logos." Texas Logos similarly alleges that its returns to the state were higher throughout the contract term and that it provided a higher guaranteed minimum annual return during the first year. It adds that "[i]n some cases, the Media Choice proposal specified rates to Texas businesses that are 650% higher than those proposed by Texas Logos, yet TxDOT ignored this disparity." Texas Logos pleads that in light of these calculations, TxDOT's award of the logo sign contract to Media Choice "waived consideration of certain required best value" factors under the Purchasing Act, TxDOT's statutes, and TxDOT's rules relating to the proposed amount of fees that would be charged to businesses participating in the program. *See* Tex. Gov't Code Ann. § 2155.074; Tex. Transp. Code Ann. § 2391.091(c) (West 2007); 43 Tex. Admin. Code § 25.403(b)(8)-(9).

Texas Logos further alleges that Media Choice's proposal would have paid TxDOT a ten-percent share of only *rental* fees it collected from participating facilities and shopping areas, and excluded a second component of total fees, *installation* fees. As Texas Logos emphasizes, the legislature has required that contracts for each type of logo sign provide for (1) the assessment of fees to be paid the contractor by eligible participants, and (2) remittance of at least ten percent of these fees to TxDOT. Tex. Transp. Code Ann. §§ 391.091(b) (specific information logo signs),

7

.0935(g) (major shopping area guide signs), .099(e) (tourist-oriented directional sign program) (West 2007). Texas Logos pleads that "[t]he law governing this Program, as well as the mandatory provisions of TxDOT's rules and the RFP, required Media Choice to remit at least 10% of *all* fees collected to the State."

Texas Logos also complains that TxDOT permitted Media Choice to submit unaudited financial statements with its proposal. In this way and others, Texas Logos urges that Media Choice failed to comply with the requirements of TxDOT's RFP. Texas Logos pleads that TxDOT's own rules governing its procurement of the logo sign contract required it to disqualify proposals that did not meet the RFP's terms. *See* 43 Tex. Admin. Code § 25.403(c)(1) ("The department will not consider a proposal that . . . fails to comply with any requirement contained in the request for proposals issued under this section . . . .").[7]

Texas Logos pled and produced evidence attempting to tie TxDOT's claimed favoritism to an alleged quid pro quo between Media Choice and a TxDOT employee who participated in the evaluation of the logo sign contract proposals. According to Texas Logos, the employee solicited employment opportunities during the procurement process and "was rewarded with, a consulting job with a subcontractor to Media Choice after TxDOT awarded the Contract to Media Choice."[8] Texas Logos also alleged additional conduct by Media Choice in the nature

---

[7] Texas Logos also cites 1 Tex. Admin. Code § 113.6(a)(7) (2007), which states that "A bid containing a material failure to comply with the advertised specifications shall be rejected." Section 113.6(a)(7) governs procurements under the Purchasing Act. *See* 43 Tex. Admin. Code § 9.3(b)(1), (10)-(11) (2007).

[8] Texas Logos also alleged that "[t]he same TxDOT employee had previously assisted in securing the approval of proprietary technology belonging to the Media Choice subcontractor while employed by TxDOT."

of fraudulent inducement. It pled that the unaudited financial statements that Media Choice submitted to TxDOT were "materially false" and "falsely overstated Media Choice's net worth by approximately one million dollars." Texas Logos also accuses Media Choice of providing "materially misleading information about which employees would perform the Logo Sign Contract" and misleading information regarding the entity that would be performing the logo sign contract.[9]

**Challenges to protest ruling and denial of contested-case proceeding**

Texas Logos also seeks declarations under the UDJA that it was entitled to a contested-case proceeding to determine its protest, that TxDOT exceeded its statutory authority in refusing that request, and that "TxDOT's protest order is, therefore, void." Texas Logos relies on section 2155.076 of the government code, another provision of the Purchasing Act. Section 2155.076 requires that:

> each state agency by rule shall develop and adopt protest procedures for resolving vendor protests relating to purchasing issues. An agency's rules must be consistent with the [building and procurement] commission's rules. The rules must include standards for maintaining documentation about the purchasing process to be used in the event of a protest.

---

[9] These and similar allegations are the subject of a related action that Texas Logos filed in the district court of Williamson County against Media Choice and related entities; the Media Choice subcontractor that allegedly "rewarded" the TxDOT employee; the now former TxDOT employee, Gregory Brinkmeyer, individually; and Brinkmeyer's consulting company. After the district court dismissed this suit for want of subject-matter jurisdiction, Texas Logos appealed to this Court, and this proceeding remains pending before us. *Texas Logos, L.P. v. Brinkmeyer*, No. 03-07-00032-CV, (Tex. App.—Austin, notice of appeal filed Jan. 22, 2007).

Tex. Gov't Code Ann. § 2155.076(a) (West 2000). Texas Logos pleads that because section 2155.076 "contemplates an adjudication of vendor's rights under the statutes and rules governing particular procurements, such protests must be conducted as contested case, consistent with the procedures in the . . . APA."

**Challenges to TxDOT protest rules**

Texas Logos's claims under section 2001.038 of the APA seek declarations that TxDOT's rules governing procurement protests—43 Tex. Admin. Code § 9.3—are invalid. It pleads that "TxDOT's protest procedures . . . fail to not only apply the contested case procedures found in the APA, but are instead a sham process designed to cloak TxDOT's actions from any meaningful scrutiny and, thus, do not . . . effectuate the intent of [section 2155.076]; and . . . contain no standards for maintaining documents to be used in the event of a protest." Texas Logos elaborates that by requiring protests to be filed within ten days after a contract award—a deadline corresponding to TxDOT's response deadline for any Public Information Act request—the TxDOT rules effectively preclude discovery. It adds that the rules lack provisions for examination of witnesses, subpoenas to obtain evidence, the appointment of a neutral hearing officer, the presentation of or objection to evidence, or "a meaningful hearing of the protest."

## ANALYSIS

Texas Logos brings two issues on appeal, asserting that the district court had subject-matter jurisdiction over Texas Logos's causes of action for declarations under the UDJA (i.e., its

10

challenges to both the logo sign contract and the protest denial order) and section 2001.038 of the APA (its challenges to TxDOT's protest rules).

**UDJA**

Texas Logos asserts that its UDJA claims properly invoked the district court's subject-matter jurisdiction because they are predicated on allegations that TxDOT acted beyond its statutory authority and seek declarations construing that authority. The UDJA provides that a claimant "whose rights, status, or other legal relations are affected by a statute . . . may have determined any question of construction or validity arising under [it] and obtain a declaration of rights, status, or other legal relations thereunder." Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a) (West 1997). The legislature intended the UDJA to be remedial, to settle and afford relief from uncertainty and insecurity with respect to rights, and to be liberally construed. *Id.* § 37.002 (West 1997); *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995).

The UDJA does not create or augment a trial court's subject-matter jurisdiction—it merely provides a remedy where subject-matter jurisdiction already exists. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.003(a) (West 1997) ("A court of record *within its jurisdiction* has power to declare rights, status, and other legal relations . . . .") (emphasis added); *Chenault v. Phillips*, 914 S.W.2d 140, 141 (Tex. 1996); *Texas Ass'n of Bus.*, 852 S.W.2d at 444. But while the UDJA cannot confer subject-matter jurisdiction in the absence of a cause of action within the court's jurisdiction, "[a] suit under the UDJA is not confined to cases in which the parties have a cause of action apart from the Act itself." *Texas Dep't of Pub. Safety v. Moore*, 985 S.W.2d 149, 153

11

(Tex. App.—Austin 1998, no pet.).[10] That is, a UDJA action will lie within the subject-matter jurisdiction of the district courts when there is (1) a justiciable controversy as to the rights and status of parties actually before the court for adjudication; and (2) that will be actually resolved by the declaration sought. *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 163-64 (Tex. 2004); *Beadle*, 907 S.W.2d at 467.

As this Court has repeatedly recognized, a justiciable controversy regarding whether a state agency or officer has acted beyond statutory authority provides a jurisdictional basis for a UDJA action seeking construction of that statutory authority.[11] This type of UDJA action, furthermore, does not implicate sovereign immunity. *Texas Ass'n. of Steel Imps., Inc.*, 372 S.W.2d at 530-31; *Cobb v. Harrington*, 190 S.W.2d 709, 712 (Tex. 1945); *see also Texas Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002) ("Private parties may seek declaratory relief against state officials who allegedly act without legal or statutory authority."); *cf. Director of Dep't of Agric. & Env't v. Printing Indus. Ass'n*, 600 S.W.2d 264, 265-66 (Tex. 1980) (if the complained-of acts of a state official are illegal or outside his statutory authority, "an entity

---

[10] *See also Bexar Metro. Water Dist. v. City of Bulverde*, 156 S.W.3d 79, 90 (Tex. App.—Austin 2004, pet. denied); *Juliff Gardens, L.L.C. v. Texas Comm'n on Envtl. Quality*, 131 S.W.3d 271, 276-77 (Tex. App.—Austin 2004, no pet.); *City of Waco v. Texas Natural Res. Conservation Comm'n*, 83 S.W.3d 169, 175 (Tex. App.—Austin 2002, pet. denied).

[11] *See, e.g.*, *Texas Dep't of Ins., Div. of Workers' Comp. v. Lumbermens Mut. Cas. Co.*, 212 S.W.3d 870, 874-75 (Tex. App.—Austin 2006, pet. denied) (claim that agency's issuance of advisories inconsistent with statutory requirements was outside of agency's statutory authority); *Sweeney v. Jefferson*, 212 S.W.3d 556, 564-65 (Tex. App.—Austin 2006, no pet.) (whether defendants removed plaques without historical commission approval and without statutory authority); *Texas Mun. Power Agency v. Public Util. Comm'n*, 100 S.W.3d 510, 516 (Tex. App.—Austin 2003, pet. denied) (a UDJA action "to interpret the scope of an agency's statutory authority . . . is sufficient to invoke the trial court's jurisdiction").

12

or person whose rights have been violated . . . may bring suit to remedy the violation or prevent its occurrence, and such suit is not a suit against the State requiring legislative or statutory authorization.").[12]

### *Challenges to logo sign contract*

In the *Steel Importers* case, as Texas Logos emphasizes, the Texas Supreme Court affirmed a declaratory judgment invalidating agency actions it held to have violated a competitive-bidding statute, and further held that the suit did not implicate sovereign immunity. The Texas Highway Commission (a TxDOT predecessor) had issued a minute order requiring that its highway

---

[12] Relying on language in certain decisions of this Court, Texas Logos suggests that the UDJA also "*waives* sovereign immunity when a party seeks interpretation or construction of an agency's statutory authority." (Emphasis added.) *See, e.g., Lumbermens*, 212 S.W.3d at 875 ("[A] UDJA action 'to interpret the scope of an agency's statutory authority . . . is sufficient to invoke the trial court's jurisdiction and to waive sovereign immunity.'" (quoting *Texas Mun. Power Agency*, 100 S.W.3d at 516). TxDOT disputes whether the UDJA waives sovereign immunity for such claims because (1) as noted, the UDJA cannot independently confer subject-matter jurisdiction on the trial court, *see Texas Ass'n of Bus.*, 852 S.W.2d at 444 (interpretation of UDJA as independently conferring subject-matter jurisdiction would render it violative of article II, section 1 of the Texas Constitution); and (2) the UDJA does not provide a waiver by "clear and unambiguous language" either explicitly or implicitly. *See* Tex. Gov't Code Ann. § 311.005 (West 2005), § 311.034 (West Supp. 2006); Tex. Civ. Prac. & Rem. Code §§ 37.001, 37.006(a) (West 1997); *but see Texas Educ. Agency v. Leeper*, 893 S.W.2d 432, 446 (Tex. 1994) (because UDJA contemplated that state government entities would be joined in suits to construe their statutory authority, it necessarily waived sovereign immunity against award of attorney's fees under the act).

We need not address whether or to what extent the UDJA waives sovereign immunity here because the type of claims Texas Logos purports to assert—declaratory claims to construe the statutory authority of a state officer or agency alleged to be exceeding that authority—does not implicate sovereign immunity. *See Cobb v. Harrington*, 190 S.W.2d 709, 712 (Tex. 1945). Nor would the asserted waiver on which Texas Logos relies impact our ultimate disposition. As Texas Logos acknowledges, the UDJA does not authorize (by sovereign immunity waiver or otherwise) a claim that seeks to control state action. *See Texas Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855-56 (Tex. 2002).

construction contracts require the use of only American-manufactured materials. *Texas Ass'n of Steel Imps., Inc.*, 372 S.W.2d at 526. A trade association representing steel importers sought declaratory judgment that the order was "invalid, illegal, void, and of no lawful effect" because it violated the applicable purchasing statute, which required competitive bidding. *Id.* at 526, 530. The supreme court agreed that the minute order violated the competitive bidding requirement of the statute:

> "Competitive bidding" require[s] due advertisement, giving opportunity to bid, and contemplates a bidding on the same undertaking upon each of the same material items covered by the contract; upon the same thing. It requires that all bidders be placed upon the same plane of equality and that they each bid upon the same terms and conditions involved in all the items and parts of the contract, and that the proposal specify as to all bids the same, or substantially similar specifications. Its purpose is to stimulate competition, prevent favoritism and secure the best work and materials at the lowest practicable price, for the best interests and benefit of the taxpayers and property owners. There can be no competitive bidding in a legal sense where the terms of the letting of the contract prevent or restrict competition, favor a contractor or materialman, or increase the cost of the work or of the materials or other items going into the project.

*Id.* at 527 (quoting *Sterrett v. Bell*, 240 S.W.2d 516, 520 (Tex. Civ. App.—Dallas 1951, no writ)).

The supreme court added that:

> [o]nce the view be adopted . . . that the Minute Order is void because it is contrary to the competitive bidding statute, there can be no basis for saying that the disputed order was authorized by law. It was wholly nugatory and hence the present proceeding cannot be classed as a suit against the state.

*Id.* at 530 (citing *Cobb*, 190 S.W.2d 790, *State v. Epperson*, 42 S.W.2d 228 (Tex. 1931), *State v. Lain*, 349 S.W.2d 579 (Tex. 1961), *and United States v. Lee*, 106 U.S. 197 (1882)). Further, the

14

court reasoned, "[a]s this is not a suit against the State," the plaintiffs—whom, the court observed, were "resident citizen property taxpayers of the State of Texas or the representatives of such property taxpayers," "[a]ll of [whom] are actively engaged in or interested in the sale and use of imported manufactured products," and some of whom "are owners of imported foreign manufactured products suitable for highway construction purposes"—"clearly have the right and litigable interest to have the challenged Minute Order declared null and void." *Id.* at 530-31.

Texas Logos equates its UDJA claims with the claim in *Steel Importers*. It argues that TxDOT, like the highway commission, was required to conduct the logo sign contract procurement "through a competitive process and had an obligation to place all bidders on the same 'plane of equality.'" *See id.* at 527. Instead, Texas Logos alleges, TxDOT waived competitive requirements and unfairly favored Media Choice over other bidders. It urges that TxDOT had no statutory authority to conduct the procurement in that manner. This absence of statutory authority, Texas Logos asserts, renders TxDOT's contract award—like the minute order in *Steel Importers*—"void." Although acknowledging that it has located "no authority . . . [that] specifically holds that *ultra vires* conduct by an agency permits a Texas court to declare void an unlawfully entered contract," Texas Logos suggests that "if all variety of agency action can be declared void by a court, there is no principled reason [why] a contract should be any different."

TxDOT responds that a contract—or at least the logo sign contract—*is* different. First, it asserts that the district court lacked subject-matter jurisdiction to invalidate the contract award (or its protest decision) because the legislature has not provided for judicial review of these agency actions. *See, e.g.*, *Texas Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.*,

15

145 S.W.3d 170, 172 (Tex. 2004) ("In Texas, a person may obtain judicial review of an administrative action only if a statute provides a right to judicial review, or the action adversely affects a vested property right or otherwise violates a constitutional right."). TxDOT asserts—and Texas Logos acknowledges—that the legislature has not explicitly provided a judicial review mechanism under the Purchasing Act or the transportation code and the company possessed no vested property right in the award of the logo sign contract that could support a claim to an inherent right of judicial review.

TxDOT's argument is misplaced. A UDJA claim is *sui generis* and, all other things being equal, the district court's subject-matter jurisdiction over it exists independently of any administrative remedies. *Texas Liquor Control Bd. v. Canyon Creek Land Corp.*, 456 S.W.2d 891, 895 (Tex. 1970); *Cobb,* 190 S.W.2d at 713. Although the subject matter of a UDJA claim—including one ostensibly concerning an agency's statutory authority—may sometimes be subsumed within the agency's exclusive jurisdiction, *see Texas Ct. Reps. Certification Bd. v. Esquire Deposition Servs.*, No. 03-06-00002-CV, ___ S.W.3d ___, 2007 Tex. App. LEXIS 5701, at *30-31 (Tex. App.—Austin July 20, 2007, no pet. h.); *cf. Texas Mun. Power Agency v. Public Util. Comm'n*, 100 S.W.3d 510, 520 (Tex. App.—Austin 2003, pet. denied) (UDJA claim to construe agency's statutory authority was broader than subject matter of contested-case proceeding), TxDOT does not claim that the legislature had granted it exclusive jurisdiction or otherwise displaced the district court's subject-matter jurisdiction to determine a valid UDJA claim to construe the agency's statutory authority in regard to the logo sign contract. Likewise, the mere fact that Texas Logos lacked vested property rights in the contract award that could give rise to an inherent right of judicial

review would not deprive it of standing to prosecute a proper UDJA claim challenging TxDOT's statutory authority in regard to the contract procurement. *See Texas Ass'n of Steel Imps., Inc.*, 372 S.W.2d at 530-31; *Texas Lottery Comm'n v. Scientific Games Int'l, Inc.*, 99 S.W.3d 376, 380 (Tex. App.—Austin 2003, pet. denied) (instant-ticket game vendor had standing to seek declaratory and injunctive relief challenging lottery commission's statutory authority to adopt policy requiring consideration of prospective vendor's economic impact on the state when awarding certain contracts).[13]

TxDOT also asserts that the legislature has given it "sole discretion" or "virtually unlimited discretion" in awarding the logo sign contract. It points to section 391.091 of the transportation code, which provides:

> (a)  The department shall contract with an individual, firm, group, or association in this state to erect and maintain specific information logo signs and major shopping area guide signs at appropriate locations along an eligible highway.
>
> (b)  The department may enter into a contract under this section *by the method that the department determines is the most practical or most advantageous for the state, including* competitive bids, competitive sealed proposals, and open market contracts.
>
> (b)[14]  A contract under this section shall provide for:
>
>> (1)  the assessment of fees to be paid to a contractor by a commercial establishment eligible for display on the specific information logo sign; and

---

[13] We find similarly unpersuasive TxDOT's attempts to characterize Texas Logos's UDJA claims challenging the logo sign contract as sounding in tort, and barred by sovereign immunity, merely because Texas Logos pleads that TxDOT's alleged extra-statutory favoritism toward Media Choice—the basis for its declaratory claims against TxDOT—enabled or included alleged tortious and fraudulent acts by Media Choice and Brinkmeyer individually.

[14] There are two subsection b's in section 391.091.

> (2)    remittance to the department of at least 10 percent of the fees collected by the contractor.
>
> (c)    The department shall make a written award of a contract to the offeror whose proposal offers *the best value for the state*. In determining the best value for the state, the department *may* consider:
>
> > (1)    revenue provided to the department by the contractor;
> >
> > (2)    fees to be charged eligible businesses or agricultural interests for inclusion on the signs;
> >
> > (3)    the quality of services offered;
> >
> > (4)    the contractor's financial resources and ability to perform; and
> >
> > (5)    *any other factor the department considers relevant.*
>
> (d)    *To the extent of any conflict, this section prevails over any other law relating to the method of the purchasing of goods and services by the department.*
>
> (e)    *Subtitle D, Title 10, Government Code, and Chapter 223 do not apply to purchases of goods and services under this section.*

Tex. Transp. Code Ann. § 391.091 (emphasis added). TxDOT observes that section 391.091 authorizes it to procure the contract "by the method that the department determines is the most practicable or most advantageous for the state," *id.* § 391.091(b), gives it discretion in determining the "best value for the state," *id.* § 391.091(c), and trumps other procurement statutes and law—including the Purchasing Act (subtitle D, title 10 of the government code), a cornerstone of Texas Logos's claims.

TxDOT contends that Texas Logos has alleged only conduct within the scope of these discretionary powers and, therefore, seeks to "control state action." In addition to barring suits for "money damages," sovereign immunity protects the state against suits to "control state action."

18

*IT-Davy*, 74 S.W.3d at 855-56; *Printing Indus. Ass'n*, 600 S.W.2d at 265-66. A suit seeks to control state action when the judgment would effectively direct or control a government official in the exercise of his or her discretionary statutory authority. *Printing Indus. Ass'n*, 600 S.W.2d at 265-66; *Griffin v. Hawn*, 341 S.W.2d 151, 152-53 (Tex. 1960); *Short v. W.T. Carter & Bro.*, 126 S.W.2d 953, 962 (Tex. 1939); *see also IT-Davy*, 74 S.W.3d at 855-56 (characterizing the imposition of contract liability as "controlling state action"). A declaratory-judgment suit ostensibly to declare statutory authority may be barred by sovereign immunity if it is predicted upon factual allegations that fall entirely within a state official's discretionary statutory powers. *McLane Co. v. Strayhorn*, 148 S.W.3d 644, 649 (Tex. App.—Austin 2004, pet. denied). In such cases, courts may be able to decide jurisdictional challenges as a matter of law based on the pleadings by construing the relevant statutes and ascertaining whether the acts pled fall within or outside discretionary powers. *See Printing Indus. Ass'n*, 600 S.W.2d at 265-70; *Griffin*, 341 S.W.2d at 153-54; *Hendee*, ___ S.W.3d at ___, 2007 Tex. App. LEXIS 4149, at *29-31; *McLane Co.*, 148 S.W.3d at 649.[15]

Texas Logos counters that, notwithstanding section 391.091 of the transportation code, TxDOT's procurement of the logo sign contract was governed by the Purchasing Act. It observes that section 391.091 is specifically addressed to contracts only for "specific information

---

[15] *See also Potter Co. Atty's Office v. Stars & Stripes Sweepstakes, L.L.C.*, 121 S.W.3d 460, 470-71 (Tex. App.—Amarillo 2003, no pet.) (holding that suit to compel release of seized eight-liners was barred by governmental immunity where machines had been lawfully seized under search warrant; suit thus "seeks to control the actions of officials acting within their authority and cannot therefore be maintained without legislative consent"); *Commissioner, Tex. Dep't of Human Servs. v. Trinity Coalition, Inc.*, 759 S.W.2d 762, 764 (Tex. App.—El Paso 1988, writ dism'd w.o.j.) (contractor's suit to enjoin agency from entering into contract with competitor and refusing it bidding rights based on unresolved audit issues was barred by sovereign immunity; "[h]ere, T.D.H.S. acted within its own delineated procedure in regulating the terms, bidding, and acceptance of contracts for day care services").

logo signs and major shopping area guide signs." Tex. Transp. Code Ann. § 391.091(a). The third type of sign made subject to the logo sign contract—the tourist-oriented directional sign program—is explicitly addressed only in section 391.099. That provision requires TxDOT to "enter into one or more contracts" with a third-party vendor to erect and maintain tourist-oriented directional signs along eligible highways. *Id.* § 391.099(b), (d) (West 2007). Like contracts for the other types of signs, contracts for the tourist-oriented directional sign program must provide for the charging of fees and remittance of at least ten percent to TxDOT. *See id.* § 391.099(e); *cf. id.* §§ 391.091(b), .0935(g). However, section 391.099 does not address the standards governing the procurement of tourist-oriented directional sign program contracts—and, unlike section 391.091, does not specifically exclude such contracts from the Purchasing Act or other procurement statutes.

Based on its construction of these statutes, Texas Logos maintains that contract procurement for the tourist-oriented directional sign program is governed by the Purchasing Act and that, moreover, TxDOT placed the entire logo sign contract under the Act by opting to procure a single combined contract for the "Information Logo and Tourist-Oriented Directional Sign Program."[16] Texas Logos adds that, in any event, these and similar arguments by TxDOT[17] properly

---

[16] It adds that, contrary to TxDOT's current position, the agency stated in its RFP that the procurement of the combined contract would be governed by the Purchasing Act. Strictly speaking, TxDOT's statements in the RFP would not estop it from later disputing the Purchasing Act's applicability. *See State v. Durham*, 860 S.W.2d 63, 67 (Tex. 1993). However, Texas Logos suggests that TxDOT's position in the RFP nonetheless may belie the merits of its current arguments.

[17] In addition to its arguments based on section 391.091 and those disputing the applicability of the Purchasing Act, TxDOT parses through Texas Logos's pleading allegations and disputes whether "the actions allegedly taken by TxDOT are actually contrary to any of the specific statutes cited by Texas Logos." Similarly, relying on its construction of these statutes, TxDOT argues that Texas Logos alleges only that the agency "made the wrong decision" within its statutory authority, not that it exceeded its authority. *See Beacon Nat'l Ins. Co. v. Montemayor*, 86 S.W.3d 260, 270 (Tex. App.—Austin 2002, no pet.).

20

go to the merits of its UDJA claims rather than the district court's subject-matter jurisdiction over them. It suggests that "[t]he fact that TxDOT and Texas Logos are debating whether the Purchasing Act applies to the Logo Sign procurement should be proof enough that there is a controversy regarding the construction and applicability of a statute that is subject to declaratory relief" and within the district court's subject-matter jurisdiction.

TxDOT counters that even if Texas Logos had, in this or other ways, pled proper UDJA claims concerning its statutory authority, the claims would nonetheless be barred by sovereign immunity because they ultimately seek to invalidate the logo sign contract, a remedy that would "control state action." It adds that because sovereign immunity precludes invalidation of the logo sign contract, the district court likewise lacks jurisdiction under the UDJA over any component issues—e.g., those concerning the applicability of the Purchasing Act—because a declaration regarding those issues would not resolve the ultimate dispute. *See Beadle*, 907 S.W.2d at 467 (citing *Texas Ass'n of Bus.*, 852 S.W.2d at 446). We must agree with TxDOT.

It is well-established that a claim—including one under the UDJA—"seeking to establish a contract's validity, to enforce performance under a contract, or to impose contractual liabilities are suits against the State." *IT-Davy*, 74 S.W.3d at 855-56 (characterizing such claims as a form of "controlling state action"); *see W.D. Haden Co. v. Dodgen,* 308 S.W.2d 838, 840 (Tex. 1958) ("A suit against officers of a state, to require them to perform acts which constitute a performance of a contract by the state, is in effect a suit against the state itself. A suit against officers of a state, the purpose or effect of which is to establish the validity of a contract of the state, or to enforce through them the performance of a contract of the state, or to require acts to be

21

performed by them which would impose contractual liabilities upon the state, is a suit against the state.") (quoting *Herring v. Houston Nat'l Exch. Bank*, 253 S.W. 813, 814 (Tex. 1923)). The Texas Supreme Court has historically regarded these immunity principles as also barring suits to cancel or nullify a contract made for the benefit of the state. *See W.D. Haden Co.*, 308 S.W.2d at 841 ("'There is a clear distinction between a suit against an officer for a wrong committed by him in the name of the state, and suits brought against an officer to prevent the exercise by the state through such officer of some act of sovereignty, or suits against an officer or agent of the state to enforce specific performance of a contract made for the state, or to enjoin the breach of such contract, or to recover damages for such breach, or *to cancel or nullify a contract made for the benefit of the state*.'") (emphasis added) (quoting *Imperial Sugar Co. v. Cabell*, 179 S.W. 83, 89 (Tex. Civ. App.—Galveston 1915, no writ).

Suits to nullify a contract made for the benefit of the state would likewise implicate sovereign immunity principles as currently articulated by the Texas Supreme Court. The contemporary rationale or justification for sovereign or governmental immunity is to protect state resources from the costs of paying judgments and defending against them so they can instead be used in accordance with the policy and budgetary directives of the legislature or local governments. *See Reata Constr. Corp.*, 197 S.W.3d at 375 (citing *IT-Davy*, 74 S.W.3d at 854) ("A lack of immunity may hamper governmental functions by requiring tax resources to be used for defending lawsuits and paying judgments rather than using those resources for their intended purposes."); *Tooke v. City of Mexia*, 197 S.W.3d 325, 331-32 (Tex. 2006) (sovereign immunity "remains firmly established, and as it has come to be applied to the various governmental entities in this State, an important

22

purpose is pragmatic: to shield the public from the costs and consequences of improvident actions of their governments"). Contracts are a well-established means through which the state or local governments effectuate their policy directives regarding governmental functions. *See, e.g.*, *Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Texas Political Subdivisions Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 322, 325-26 (Tex. 2006); *Tooke*, 197 S.W.3d at 329; *Big Spring v. Board of Control*, 404 S.W.2d 810, 817 (Tex. 1966); *Osborne v. Keith*, 177 S.W.2d 198, 201 (Tex. 1944). Furthermore, contracts may provide financial benefits for governmental entities, and thus, will have implications for budgetary and appropriations processes. Such is the case with the logo sign contract, which, as TxDOT observes, guarantees it several million in minimum payments during the contract term. By interfering with these policy and budgetary decisions regarding the use of state resources, a suit to invalidate the logo sign contract implicates sovereign immunity.

We disagree with Texas Logos that the statutory violations it alleges would, if proven, render the logo sign contract *void*; i.e., a nullity. TxDOT possessed express statutory authority to contract with regard to all three types of signs addressed in the logo sign contract. *See* Tex. Transp. Code Ann. §§ 391.091(a) ("The department shall contract with an individual, firm, group, or association in this state to erect and maintain specific information logo signs and major shopping area guide signs at appropriate locations along an eligible highway."), .0935(f) ("The commission may contract with an individual, firm, group, or association in this state to erect and maintain major shopping area guide signs at appropriate locations along an eligible urban highway."), .099(d) ("The commission shall enter into one or more contracts with an individual, firm, group, or association in this state to erect and maintain tourist-oriented directional signs at locations along eligible

23

highways."). Furthermore, the Purchasing Act—assuming it applies, as Texas Logos argues—does not reflect legislative intent to render void an otherwise-authorized contract executed in violation of its requirements. Instead, the legislature provided a range of other remedies and responses to violations, including agency protest procedures, *see* Tex. Gov't Code Ann. § 2155.076, dismissal of agency employees, *id.* § 2155.003 (West 2000) (conflict-of-interest prohibitions), legal action by the agency against defaulting contractors, *id.* § 2155.070(c) (West 2000), and removing vendors from participating in state contracts, *id.* §§ 2155.070(d), 2155.077 (West 2000). *See also id.* § 2155.004(d) (West Supp. 2006) (prohibition against agencies accepting bids or awarding contracts including financial participation of certain agency personnel "does not create a cause of action to contest a bid or award of a state contract"). This statutory scheme contemplates that while contracts executed in violation of the Act's requirements might be subject to invalidation by the agency or other statutory remedies, they would not be rendered a legal nullity on that basis. *Cf. Friends of Canyon Lake, Inc. v. Guadalupe-Blanco River Auth.*, 96 S.W.3d 519, 528 (Tex. App.—Austin 2002, pet. denied) (allegations that applicant had failed to give required notice and "failed to provide statutorily required information to the TNRCC" as part of water right permit application process did not state claim that TNRCC had acted wholly beyond its statutory permitting jurisdiction). Finally, Texas Logos's allegations of fraud or misrepresentation by Media Choice or self-dealing by an employee are the types of allegations that render a contract voidable, not void. *See Dallas Farm Machinery Co. v. Reaves*, 158 Tex. 1, 12 (Tex. 1957); *Osborne*, 177 S.W.2d at 201.

We agree with TxDOT that the sovereign-immunity implications of its existing contract with Media Choice distinguish this case from *Steel Importers* and the other cases involving

24

challenges to agency statutory authority on which Texas Logos relies. Texas Logos's cases each involved declarations or injunctions that operated prospectively to compel state officials and agencies to comply with their statutory authority. Although these remedies had the effect of invalidating certain agency directives or policies, they did not establish a right to money damages or invalidate an existing contract. Texas Logos's claims, by contrast, explicitly attack an existing contract with the state.

An otherwise-proper declaratory claim alleging statutory violations may nonetheless have the effect of establishing a right to a remedy that is barred by sovereign immunity. For example, a declaratory claim that would be proper if asserted to compel the state to act within its statutory powers prospectively may nonetheless be barred by sovereign immunity to the extent it alleges past statutory violations that implicate a right to money damages. This distinction is illustrated by recent Texas decisions concerning declaratory claims of statutory rights to payments. In *City of Houston v. Williams*, a group of retired firefighters sought a declaratory judgment that the city had violated chapter 143 of the local government code by improperly calculating lump-sum payments of accrued vacation and sick leave paid upon termination and in improperly deducting alleged overpayments of overtime. 216 S.W.3d 827, 828 (Tex. 2007) (per curiam); *see* Tex. Loc. Gov't Code Ann. §§ 142.0017, 143.115-.116 (West 1999). The city filed a plea to the jurisdiction asserting governmental immunity, which the district court denied and the court of appeals affirmed. In relevant part, the court of appeals held that the city had no immunity from the retirees' declaratory judgment claim because it sought construction of the pertinent statutory rights and the trial court had purported to reserve determination of damages for a later date. The supreme court reversed, holding

25

that the firefighters' declaratory judgment claim actually sought money damages and, therefore, implicated the city's governmental immunity. *Williams*, 216 S.W.3d at 828-29 (citing *IT-Davy*, 74 S.W.3d at 856).

The supreme court reasoned that "[t]he only injury the retired firefighters allege has already occurred, leaving them with only one plausible remedy—an award of money damages." *Id.* at 829. It further explained that whether the plaintiffs sought a declaration regarding a "legitimate question of statutory interpretation" was irrelevant, because, "in every suit against a governmental entity for money damages, a court must first determine the parties' contract or statutory rights; if the sole purpose of such a declaration is to obtain a money judgment, immunity is not waived." *Id.* As for the trial court's reservation of a damages determination, the court observed that "governmental immunity does not spring into existence when a damages award is finally made; it shields governments from the costs of any litigation leading up to that goal." *Id.*

*Williams* thus recognized a dichotomy between declaratory and injunctive claims regarding *past* violations of statutory rights to payment under chapter 143 (which implicate governmental immunity because the "only plausible remedy" is money damages) and those seeking only to compel a municipality to comply with the statutes in the future (which, even while implicating rights to future payments, do not implicate immunity). *See Bell v. City of Grand Prairie*, 221 S.W.3d 317, 324-26 (Tex. App.—Dallas 2007, no pet.).[18]

---

[18] *Accord City of Seagoville v. Lytle*, No. 05-06-01016-CV, 227 S.W.3d 401, 410-12 (Tex. App.—Dallas 2007, no pet. h.) (employing similar analysis in holding that declaratory-judgment, mandamus, and injunctive relief claims alleging termination in violation of local government code sections 614.022 and 614.023 were barred by governmental immunity to the extent they sought back pay or back benefits, but not to the extent they sought prospective reinstatement

26

A similar principle governs here. Even if sovereign immunity would not otherwise have barred Texas Logos's declaratory claims if it had alleged ongoing statutory violations in the logo sign procurement and sought to make TxDOT comply with these statutes, Texas Logos alleges only *past* statutory violations, the "only plausible remedy" for which is the invalidation of the contract.[19] Such a remedy, we have seen, implicates sovereign immunity and bars Texas Logos's UDJA claims challenging the logo sign contract and procurement. *See Williams*, 216 S.W.3d at 828-29; *see also Tooke*, 197 S.W.3d at 331-32 (sovereign or governmental immunity functions "to shield the public from the costs and consequences of improvident actions of their governments").

### *Challenges to procurement order & denial of contested case hearing*

We likewise conclude that sovereign immunity bars Texas Logos's UDJA claims alleging that TxDOT acted beyond its statutory authority in refusing to determine its protest through a contested-case proceeding and seeking a declaration voiding TxDOT's denial of the protest. Under the precedent of this Court, Texas Logos does not allege acts by TxDOT that exceed its statutory authority. *See Printing Indus. Ass'n*, 600 S.W.2d at 265-70; *Hendee*, ___ S.W.3d at ___, 2007 Tex. App. LEXIS 4149, at *29-31; *McLane Co.*, 148 S.W.3d at 649. Specifically, this Court has long held that, absent express statutory authority, the APA does not independently provide a right

---

only); *City of Dallas v. Albert*, 214 S.W.3d 631, 633, 637 (Tex. App.—Dallas 2006, pet. filed) (similar analysis in suit alleging failure to pay police officers and firefighters in accordance with voter-approved pay referendum; suit barred by governmental immunity to the extent it sought back pay and benefits); *City of Dallas v. Martin*, 214 S.W.3d 638, 640, 644 (Tex. App.—Dallas 2007, pet. filed) (same).

[19] Texas Logos confirmed during oral argument that it complains only of TxDOT's alleged past statutory violations, not of any ongoing or future violations.

to a contested case hearing.[20]  Texas Logos has not asserted a basis for our distinguishing or departing from these decisions.  Barring any, we overrule Texas Logos's first issue.

**Section 2001.038**

In its second issue, Texas Logos asserts that the district court had subject-matter jurisdiction over its cause of action for a declaration under section 2001.038 of the APA that TxDOT's protest rules are invalid.  Section 2001.038 creates a cause of action for declaratory judgment regarding "[t]he validity or applicability of a rule . . . if it is alleged that the rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff."  Tex. Gov't Code Ann. § 2001.038(a).  Unlike the UDJA, section 2001.038 is a grant of original jurisdiction and, moreover, waives sovereign immunity.  *Id.* § 2001.038(a), (c); *Texas Dep't of Human Servs. v. ARA Living Ctrs. of Tex.*, 833 S.W.2d 689, 693 (Tex. App.—Austin 1992, writ denied); *Southwestern Bell Tel. Co. v. Public Util. Comm'n*, 735 S.W.2d 663, 669 (Tex. App.—Austin 1987, no writ).

However, section 2001.038, like other causes of action, requires the existence of a justiciable controversy to establish the district court's subject-matter jurisdiction.  The justiciable

---

[20]  *See, e.g.*, *Eldercare Props., Inc. v. Texas Dep't of Human Servs.*, 63 S.W.3d 551, 557 (Tex. App.—Austin 2001, pet. denied), *overruled on other grounds by Mega Child Care, Inc.*, 145 S.W.3d at 173; *Best & Co. v. State Bd. of Plumbing Exam'rs*, 927 S.W.2d 306, 309-310 (Tex. App.—Austin1996, writ denied); *H. Tebbs, Inc. v. Silver Eagle Distributors, Inc.*, 797 S.W.2d 80, 85 (Tex. App.—Austin 1990, no writ); *see also Shrieve v. Texas Parks & Wildlife Dep't*, 2005 Tex. App. LEXIS 3406, at *13 (Tex. App.—Austin May 5, 2005, no pet.) (mem. op.).

controversy that Texas Logos pled concerned its rights relative to TxDOT's award of the logo sign contract to Media Choice and its protest of that award. We have held that sovereign immunity bars Texas Logos's UDJA claims to invalidate the contract and protest order. The relief provided under section 2001.038 does not extend to invalidating either TxDOT's protest order or its ultimate contract award, but only the rules by which the protest was conducted. At this juncture, Texas Logos's section 2001.038 challenge to the validity of those rules would amount to a mere abstract, advisory opinion. *Cf. Friends of Canyon Lake*, 96 S.W.3d at 529 (district court lacked subject-matter jurisdiction over section 2001.038 rule challenge where underlying controversy had been extinguished by plaintiff's failure to exhaust administrative remedies). We overrule Texas Logos's second issue.

**CONCLUSION**

Having overruled Texas Logos's issues, we affirm the district court's judgment dismissing Texas Logos's suit for want of subject-matter jurisdiction. As our disposition is controlled by principles of sovereign immunity, we are not passing on the merits of Texas Logos's allegations concerning the logo sign procurement. Although sometimes criticized as arbitrary or unfair in the manner by which it shields alleged "improvident actions" by government from judicial redress, sovereign immunity is nonetheless the established law of Texas that we are bound to apply.

But we observe that, as a corollary to sovereign immunity principles, the judiciary defers to the legislature to decide when, if, or to what extent to waive such immunity, as these decisions entail sensitive policy judgments concerning the use of public resources and governmental

29

functions that are the proper domain of that branch.[21]  The legislature may, as it sees fit, waive immunity by statute or express permission.  *Tooke*, 197 S.W.3d at 332-33; *IT-Davy*, 74 S.W.3d at 853-54.  Further, while Texas Logos correctly notes that "the courts of this State . . . have [some] jurisdiction to reign in agencies that overstep their statutory authority" through mechanisms like the UDJA, we note that the legislature and executive possess much more expansive powers in this regard, when they deem such actions appropriate.[22]

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices Puryear and Pemberton

Affirmed

Filed:  August 30, 2007

_____

[21]  *See City of Galveston v. State*, 217 S.W.3d 466, 469 (Tex. 2007) ("This heavy presumption in favor of immunity arises not just from separation-of-powers principles but from practical concerns.  In a world with increasingly complex webs of government units, the Legislature is better suited to make the distinctions, exceptions, and limitations that different situations require.  The extent to which any particular city, county, port, municipal utility district, school district, or university should pay damages involves policy issues the Legislature is better able to balance."); *Reata Constr. Corp.*, 197 S.W.3d at 375 ("We have generally deferred to the Legislature to waive immunity because the Legislature is better suited to address the conflicting policy issues involved.") (citing *IT-Davy*, 74 S.W.3d at 854 ("We have consistently deferred to the Legislature to waive sovereign immunity from suit, because this allows the Legislature to protect its policymaking function.")).

[22]  We intend no comment regarding Texas Logos's pending appeal of its *Brinkmeyer* suit.