# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-17-00552-CV

**Appellants, Dentistry of Brownsville, PC; KS2 TX, PC; Summit Dental Center, LP; and Harlingen Family Dentistry// Cross-Appellants, Texas Health and Human Services Commission; Charles Smith, Executive Commissioner; and Suja Pillai, M.D.[1]**

**v.**

**Appellees, Texas Health and Human Services Commission; Charles Smith, Executive Commissioner; and Suja Pillai, M.D.// Cross-Appellee, Harlingen Family Dentistry**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT NO. D-1-GN-16-005358, HONORABLE KARIN CRUMP, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellants are dentistry practices and Medicaid providers (Providers) that applied with the Texas Health and Human Services Commission (HHSC) to receive federal incentive payments for transitioning to a certified electronic health records (EHR) technology program. After the Providers received substantial incentive sums, the HHSC audited them and concluded that they had not qualified for the incentives. Pursuant to the Providers' request, the HHSC conducted an internal review of the audit through the use of an ad hoc panel, after which the HHSC issued letters to the Providers informing them that the HHSC would begin recouping from them the previously

---

[1]  Suja Pillai, M.D., is automatically substituted herein for original Cross-Appellant and Appellee, Gina Maria Muñiz, in Ms. Pillai's official capacity as Interim Director of the Texas Health and Human Services Commission's Office of Medicaid-CHIP Health Information Services and Quality (HISQ). *See* Tex. R. App. P. 7.2(a).

paid incentive payments. The Providers filed a suit against HHSC asserting challenges to particular HHSC rules and that HHSC employees acted ultra vires in conducting the audits and internally reviewing the results.

The Providers appeal the trial court's grant of HHSC's plea to the jurisdiction and motion for summary judgment; on cross-appeal, the HHSC appeals the trial court's implicit denial of its plea to the jurisdiction as to Harlingen Family Dentistry (Harlingen) when it granted summary judgment as to Harlingen's claims. We reverse the trial court's summary judgment in favor of HHSC on Harlingen's claims and render judgment granting HHSC's plea to the jurisdiction as to all of Harlingen's claims. We otherwise affirm the trial court's judgment.

## BACKGROUND[2]

In 2011 the Providers applied to HHSC to receive funds from the EHR incentive program, whereby federal grant money was made available to Providers' dentists in exchange for the dentists transitioning to a certified EHR technology system. HHSC is the state agency responsible for administering the federal grant money to eligible dentists who adopt, implement, or upgrade to certified EHR systems. *See* Tex. Hum. Res. Code § 32.021 (noting that HHSC is "the single state agency designated to administer the [federal] medical assistance program [Medicaid]"); *see also* 42 C.F.R. § 495.314 (2018) (Centers for Medicare & Medicaid Services, Department of Health and Human Services, Activities required to receive an incentive payment). The EHR incentive payments

---

[2] The facts in this section are taken from the Providers' live petition, and we provide only a brief recital of the facts, procedural history, and standards of review, to the extent necessary to advise the parties of the Court's decision and the basic reasons therefor. *See* Tex. R. App. P. 47.4.

are 100% federal funds, but the HHSC was responsible for applying federal eligibility criteria for the funds and deciding how to disburse them.

The Providers worked closely with HHSC and its grant administrator, the Texas Medicaid Healthcare Partnership (TMHP), to assure that their applications for the incentives met the federal eligibility requirements. Those requirements were communicated to the Providers by TMHP, the applications were reviewed and approved by TMHP, and funds were disbursed to Providers by TMHP. Over $3 million was collectively paid to the Providers as incentive to make their health records EHR compliant.

In 2012 HHSC retained an auditor to ensure that the grant money was properly spent by providers who received the funds. In 2014 and 2015 HHSC staff issued letters to the Providers indicating that it had adopted the auditor's conclusion that the Providers' dentists had not qualified for the EHR incentives and would require the repayment of the funds disbursed to the Providers. The Providers requested an appeal of the staff's findings, and the HHSC submitted the appeal to an ad hoc panel for review. HHSC did not permit the Providers to submit additional evidence to the panel or to meet with them in person despite the Providers' request.

In September 2016 HHSC issued a letter to Dentistry of Brownsville, PC, and KS2 TX, PC (collectively referred to by the parties as Kool Smiles), reciting that it had reached a "final determination" that the "45 Kool Smiles dentists appealing the Final Audit Report did not demonstrate that they adopted, implemented, or upgraded certified electronic health record technology (CEHRT) during program year (PY) 2011 as required by 42 C.F.R. § 495.314." The letter further provided that, based on its "final determination," HHSC "will initiate recoupment of

3

the incentive funds disbursed to . . . providers for PY 2011." In February 2017 and May 2018 HHSC issued substantively similar letters to Summit Dental Center, LP (Summit) and Harlingen, respectively.[3]

After receiving the letters, the Providers filed a lawsuit alleging that (1) HHSC acted ultra vires in conducting the audits and ordering recoupment of the incentive payments and (2) particular HHSC rules applicable to the audits and procedures employed here are invalid and inapplicable to their circumstances. HHSC filed a plea to the jurisdiction and a motion for summary judgment. The trial court granted HHSC's plea to the jurisdiction as to Kool Smiles and Summit. The trial court granted HHSC's motion for summary judgment as to Harlingen.

## DISCUSSION[4]

**Rule challenges**

In their second issue, the Providers contend that the trial court erred in granting HHSC's plea to the jurisdiction as to the rule challenges of Kool Smiles and Summit.[5] The Providers alleged in their live petition that they were challenging the validity and applicability of HHSC rules 356.202 and 354.1450, for which sovereign immunity was waived under Government

---

[3] As of the date the Providers' live petition was filed, HHSC had not yet issued a final determination as to Harlingen. However, HHSC has filed a supplemental letter brief with this Court informing us that HHSC has since issued a final determination as to Harlingen and attaching a copy of such letter.

[4] We review the granting of a plea to the jurisdiction and summary judgment under well-established standards of review that we need not set out here. *See First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 219–20 (Tex. 2017) (summary judgment); *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226–28 (Tex. 2004) (plea to jurisdiction).

[5] The trial court granted HHSC summary judgment as to Harlingen's rule challenges. We will address the parties' contentions about that ruling infra.

Code section 2001.038. *See* Tex. Gov't Code § 2001.038; 1 Tex. Admin. Code §§ 356.202 (2018) (Texas Health & Human Services Commission, Audit Review and Recoupment), 354.1450 (2018) (Texas Health & Human Services Commission, Audits of Medicaid Providers). The Providers outlined seven reasons for the rules' invalidity or inapplicability and contend on appeal that we must "review HHSC's summary judgment evidence to determine whether the evidence is competent to overcome each of the Providers' rule challenges as a matter of law." *See Texas Parks & Wildlife Dep't v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004) ("[I]f the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law.").

We conclude that the trial court properly granted HHSC's plea to the jurisdiction as to the rule challenges of Summit and Kool Smiles. Like other causes of action, a suit for a declaratory judgment under section 2001.038 requires the existence of a justiciable controversy to establish the trial court's jurisdiction. *Machete's Chop Shop, Inc. v. Texas Film Comm'n*, 483 S.W.3d 272, 286 (Tex. App.—Austin 2016, no pet.). The justiciable controversy that the Providers pleaded concerned their claim that HHSC's audit procedure and resulting decision to recoup the incentive payments were unauthorized, which is, in essence, a claim that the recoupments should not have been ordered. In other words, the Providers' alleged justiciable controversy concerns the rules under which the audit-review was conducted, which process has been finalized as noted in the HHSC recoupment letters. However, the Providers have identified no authority providing them a right to judicial review of HHSC's final audit and recoupment decision; their section 2001.038

5

claim is, therefore, moot.[6]  *See id.* (holding that party's rule-challenge claim was equivalent to claim that commission's decision to deny grant for feature film was unauthorized or improper but that controversy was moot because sovereign immunity barred declaratory-judgment claims, and there was no other right to judicial review of decision); *Bacon v. Texas Historical Comm'n*, 411 S.W.3d 161, 181 (Tex. App.—Austin 2013, no pet.) ("[A]bsent a right of judicial review from the THC proceedings or other claim to challenge them that is within the district court's jurisdiction, Bacon's section 2001.038 claim for declaratory relief is moot."); *Creedmoor-Maha Water Supply Corp. v. Texas Comm'n on Envtl. Quality*, 307 S.W.3d 505, 526, n.16 (Tex. App.—Austin 2010, no pet.) (holding that justiciable controversy that could have supported rule challenge was rendered moot by agency's final, unappealable order); *see also Texas Logos, L.P. v. Texas Dep't of Transp.*, 241 S.W.3d 105, 123–24 (Tex. App.—Austin 2007, no pet.) (holding that because relief provided under section 2001.038 does not extend to invalidating agency decision, but only rules by which proceedings were conducted, challenge to validity of those rules would amount to mere abstract,

---

[6]  For the first time on appeal, the Providers claim that they continue to be subject to the challenged audit-procedure rules with respect to other dentists in their practices who may apply for EHR incentives in the future, pointing to testimony elicited at the temporary-injunction hearing that some of the dentists are "ready" to make "attestations" necessary to support EHR incentive applications. However, neither this evidence nor the Providers' live petition alleges that any dentists have actually applied to receive additional incentives since the applications were made for the incentives at issue in this case, making the Providers' claim of threatened application of the challenged rules merely hypothetical and speculative. *See VanderWerff v. Texas Bd. of Chiropractic Exam'rs*, No. 03-12-00711-CV, 2014 WL 7466814, at *2 (Tex. App.—Austin Dec. 18, 2014, no pet.) (mem. op.) (holding that, beyond board's actions and interpretation of challenged rules in underlying contested case, which was not before court on appeal, appellant did not plead any actual threat that board would apply rules again to him, concluding that "litigants may not employ declaratory-judgment actions to obtain impermissible advisory opinions seeking to interpret statutes or agency rules").

advisory opinion where no legal right or privilege of plaintiff was alleged to be impaired or threatened). Accordingly, we overrule the Providers' first and second issues.[7]

**Ultra vires claims**

In their third issue, the Providers contend that the trial court erred in granting HHSC's plea to the jurisdiction as to the ultra vires claims of Summit and Kool Smiles.[8] *See Houston Belt & Terminal Ry. Co. v. City of Hous.*, 487 S.W.3d 154, 157–58 (Tex. 2016) (noting that governmental immunity does not bar claims alleging that governmental officer acted ultra vires, or without legal authority, in carrying out duties). To fall within the ultra vires exception to sovereign immunity, a suit must not complain of a governmental officer's exercise of discretion but, rather, must allege that the officer acted without legal authority or failed to perform a purely ministerial act. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009). Our review of the Providers' live petition leads us to conclude that all of the complained-of acts were either within the HHSC's discretion or were authorized by applicable statutes or rules. *See Coastal Habitat All. v. Public Util. Comm'n*, 294 S.W.3d 276, 284 (Tex. App.—Austin 2009, no pet.) ("[I]f the plaintiff alleges only facts demonstrating acts within the officer's legal authority and discretion, the claim seeks to control state action, and is barred by sovereign immunity.").

---

[7] Because of our disposition of the Providers' second issue, we need not reach their first issue, in which they contend that the trial court "misapplied the standard of review" for pleas to the jurisdiction by requiring the Providers to "prove their jurisdictional facts as a matter of law." The question of whether the Providers assert a justiciable controversy so as to support their rule challenges presents a question of law, which does not turn on the existence or resolution of any fact issues.

[8] The trial court granted HHSC summary judgment as to Harlingen's ultra vires claims. We will address the parties' contentions about that ruling infra.

7

The Providers' primary ultra vires contention is that HHSC did not provide them with a "required" contested-case hearing under the APA. *See* Tex. Gov't Code § 2001.171 (defining "contested case" under APA as "proceeding, including a ratemaking or licensing proceeding, in which the legal rights, duties, or privileges of a party are to be determined by a state agency after an opportunity for adjudicative hearing"). However, the Providers have identified no statutes that require a contested-case hearing in these circumstances,[9] and we have found none. Absent express statutory authority, the APA does not independently provide a right to a contested-case hearing. *Pharmserv, Inc. v. Texas Health & Human Servs. Comm'n*, No. 03-13-00526-CV, 2015 WL 1612006, *5–6 (Tex. App.—Austin 2015, no pet.) (mem. op.) (citing *Texas Logos*, 241 S.W.3d at 123). It is an agency's enabling statute that determines whether rights are to be determined after an opportunity for an adjudicative hearing, and agency rules may decide whether that opportunity includes a

---

[9] Although the Providers cited three statutes and one federal regulation in their briefing as purportedly requiring a contested-case hearing, their brief wholly failed to provide any argument for why those statutes apply to these circumstances and require such a hearing, contending only that HHSC "provided no evidence to dispute" the Providers' arguments. Accordingly, the Providers have waived the issue by failing to adequately brief it. *See* Tex. R. App. P. 38.1.; *Premier Learning Acad., Inc. v. Texas Educ. Agency*, 521 S.W.3d 439, 443 (Tex. App.—Austin 2017, pet. denied). We also note that the question of whether such a hearing was required is a legal question, and HHSC did not need to support its arguments on this issue with evidence. In any event, none of the four authorities cited by the Providers requires HHSC to provide a contested-case hearing under these circumstances. *See* Tex. Hum. Res. Code §§ 32.0281 (providing requirements for rules relating to "payment rates" that HHSC Executive Commissioner shall adopt), 32.034 (providing that when HHSC "intends to cancel its contract or impose monetary penalties under a contract with a person providing medical assistance" it shall provide contested-case hearing in accordance with Chapter 2001 of Government Code); Tex. Gov't Code § 2105.302(a) (applying to termination of contracts and subgrants from block grant funds); 42 C.F.R. § 495.370 (2018) (Centers for Medicare & Medicaid Services, Department of Health & Human Services, Appeals process for a Medicaid provider receiving electronic health record incentive payments) (providing that State must have process in place for providers to appeal issues relating to incentive payments and provider-eligibility determinations that "employs methods for conducting an appeal that are consistent with the State's Administrative Procedure law(s)").

contested-case hearing. *Id.* ("[N]ot every dispute between an agency and another party constitutes a contested case proceeding."); *see also Texas Comm'n on Envtl. Quality v. City of Waco*, 413 S.W.3d 409, 423 (Tex. 2013).

Human Resources Code section 32.070 requires HHSC to adopt rules governing the audit of providers. *See* Tex. Hum. Res. Code § 32.070; *see also id.* § 32.021(a) (noting that HHSC is sole state agency designated to administer Medicaid); Tex. Gov't Code § 531.0055 (delegating to HHSC authority to supervise administration and operation of Medicaid, including effective use of federal funds). Relevantly, those rules must permit the provider to appeal a draft audit report to "an ad hoc review panel, composed of providers practicing or doing business in this state appointed by the executive commissioner, to administer an informal process" that makes a non-binding recommendation to the agency. *See* Tex. Hum. Res. Code § 32.070(c). Beyond the ad hoc review panel, however, the statute does not provide a right to a contested-case hearing or to judicial review. *See id.* HHSC could not have acted ultra vires by failing to provide a contested-case hearing when no statute required it to provide one.

In addition to their contentions about a contested-case hearing, the Providers made other allegations of ultra vires actions by HHSC, which allegations we list below, each followed by our conclusions thereon:

*HHSC's recoupment was not "authorized."*

HHSC issued letters to the Providers in which the agency explained its "final determination" that the Providers "did not demonstrate that they adopted, implemented, or upgraded certified electronic health record technology (CEHRT) during [the] program year . . . as required by

9

42 C.F.R. § 495.314" and that HHSC "will initiate recoupment of the incentive funds disbursed." The Providers contend that because these letters were signed by HHSC staff, rather than the Executive Commissioner, HHSC's recoupment actions taken pursuant to the letters are unauthorized. However, the Providers have cited no authority supporting their contention that the Executive Commissioner has exclusive decision-making authority pertaining to audits and recoupment of EHR incentives and that HHSC staff is not authorized to make such determinations. Accordingly, this ultra vires claim is not viable.

*The ad hoc panel did not allow the Providers to submit additional supporting documentation.*

The Providers cite to an "action memo" approved by the HHSC Executive Commissioner as "requiring" the ad hoc panel to accept supporting documentation from the Providers when reviewing an audit. However, even assuming without deciding that strict adherence to the action memo might constitute a purely "ministerial act" for which an ultra vires action could lie, our review of that document leads us to conclude that it did not require the panel to accept supporting documentation from the Providers. The action memo states:

> As required by statute and by rule, the ad hoc committee can complete the informal process exclusively by reviewing the provider's final audit report or unfavorable audit finding file(s) as well as supporting documentation and case files provided by HHSC and the [provider]. After reviewing the information, the committee will issue a non-binding written recommendation to HHSC.

The plain language of the action memo indicates that the ad hoc panel has the discretion to review documentation submitted by the provider; however, it does not require such action. This ultra vires claim is not viable.

*HHSC staff did not provide the ad hoc panel members with complete information and required the auditors and ad hoc panel to apply an "incorrect standard" during the audit process.*

The Providers contend that it was an ultra vires act for HHSC staff to not inform the auditors or ad hoc review panel that some of the individual dental providers' attestations for the EHR incentive program had "passed" a pre-payment audit. However, the Providers have identified nothing in statute, rule, or policy that required HHSC to provide the auditors and panel such information, and the HHSC staff's alleged failure to convey such information to the panel could not have been an unauthorized act, given the Legislature's delegation of broad authority to HHSC to administer federal Medicaid funds. *See, e.g.*, Tex. Hum. Res. Code § 32.021(a); Tex. Gov't Code § 531.0055. Furthermore, even if HHSC staff had provided the auditors and ad hoc panel with the "incorrect standard" for reviewing providers' eligibility for the incentives, as the Providers allege, such allegedly improper actions were not ultra vires as a matter of law because an agency's merely "getting it wrong" does not equate to an ultra vires act. *See, e.g.*, *City of Austin v. Utility Assocs., Inc.*, 517 S.W.3d 300, 310 (Tex. App.—Austin 2017, pet. denied) (noting distinction between alleged agency actions that are "truly" ultra vires of agency's decision-making authority, which are not shielded by sovereign immunity, and complaints that the agency merely "got it wrong" while acting within its decision-making authority). Even if HHSC staff made a mistake by "requiring" the ad hoc panel to apply an "incorrect" standard, such actions were within the agency's broad discretion. *See id.* This ultra vires claim also is not viable.

*HHSC's in-house review process was a violation of the Providers' due-process rights.*

The Providers contend that the HHSC review process "was its own feedback loop, delivering weighted results at every turn that cannot be effectively monitored for objectivity,

11

or meaningfully challenged by the Providers" because HHSC staff "acts as the legislature, the investigator, the prosecutor, the judge, and the jury." The Providers allege that this review process was an "ultra vires violation of the Providers' due process rights." However, the Providers have not identified any statute, rule, or policy that required HHSC to provide any particular procedure for the audit-review process, and HHSC's process could not, therefore, have exceeded its statutory authority. Furthermore, the requirements of procedural due process apply only to the deprivation of constitutionally protected interests, *see University of Tex. Med. Sch. at Hous. v. Than*, 901 S.W.2d 926, 929 (Tex. 1995), and the Providers have pleaded no such interest here, *see McAllen Hosps., L.P. v. Suehs*, 426 S.W.3d 304, 312–13 (Tex. App.—Amarillo 2014, no pet.) (holding that hospitals' receipt of Medicaid reimbursements from HHSC was not vested property interest because HHSC retained authority to adjust or recoup them under applicable rules' utilization-review procedures and, thus, trial court properly granted HHSC's plea to jurisdiction); *see also Combs v. City of Webster*, 311 S.W.3d 85, 92–93 (Tex. App.—Austin 2009, pet. denied) (affirming comptroller's plea to jurisdiction on city's due-process claims challenging comptroller's attempt to recover sales-tax revenues already disbursed to city because city had no vested property right to revenues due to comptroller's authority to make refunds or credits based on taxpayers' overpayments for four-year period). This ultra vires claim is not viable.

*HHSC applied "inapplicable" statutes and rules.*

Finally, the Providers contend that it was ultra vires for HHSC to apply the audit procedure set out in Human Resources Code section 32.070 because, they contend, the statute does not apply to EHR incentive payments. However, HHSC applied the audit procedure set out in rule

12

356.202, which was adopted pursuant to Human Resources Code section 32.021 and Government Code sections 531.021 and 531.0055. *See* 39 Tex. Reg. 2833 (2014) (adopting new rule 356.202 and listing statutory authority for rule). Furthermore, there is no "audit procedure" set out in Human Resources Code section 32.070; rather, that section applies generally to "audits of providers" and requires the HHSC Executive Commissioner to "adopt rules governing the audit of [Medicaid] providers." *See* Tex. Hum. Res. Code § 32.070. Rule 356.202 provides a specific procedure for the review of audit findings and recoupment of overpayments in the EHR incentive program. *See* 1 Tex. Admin. Code § 356.202. We fail to see how HHSC's application of its rules for the review of audit findings and payment recoupment in the EHR incentive program could constitute an ultra vires act under these circumstances.

We overrule the Providers' third issue.

**HHSC's cross-appeal**

In one issue on cross-appeal, HHSC contends that the trial court erred in "implicitly denying HHSC's plea to the jurisdiction on Harlingen's . . . claims when it granted HHSC's motion for summary judgment on those claims." HHSC contends that the trial court lacks subject-matter jurisdiction over all of Harlingen's claims "for the same [legal] reasons" that it lacked jurisdiction over Summit's and Kool Smiles's claims. We agree. Accordingly, we sustain HHSC's sole issue on cross-appeal and hold that the trial court erred in implicitly denying HHSC's plea to the jurisdiction as to Harlingen's claims. Because of our ruling on HHSC's issue on cross-appeal, we need not reach the Providers' fourth issue, in which they contend that the trial court erred in granting HHSC's motion for summary judgment as to Harlingen's claims.

13

**CONCLUSION**

We sustain HHSC's sole issue on cross-appeal, hold that the trial court erred in denying HHSC's plea to the jurisdiction as to Harlingen's claims, reverse the trial court's summary judgment as to Harlingen's claims, and render judgment granting HHSC's plea to the jurisdiction as to all of Harlingen's claims and dismissing those claims with prejudice. We affirm the trial court's judgment in all other respects.

_____

David Puryear, Justice

Before Justices Puryear, Bourland, and Toth

Affirmed in Part; Reversed and Rendered in Part

Filed:   October 18, 2018

14